UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMETRIUS BRADLEY,

Petitioner,                                    Case No. 2:20-cv-10175

v.                                             U.S DISTRICT COURT JUDGE
                                               GERSHWIN A. DRAIN

KRISTOPHER TASKILA,

Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Demetrius Bradley (Petitioner), presently confined at the Macomb Correctional Facility in Lenox Township, Michigan, is serving a sentence of thirty-five to fifty-five years imprisonment for his jury-based convictions of assault with intent to commit murder, MICH. COMP. LAWS § 750.83; felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of, or attempt to commit, a felony ("felony-firearm"), MICH. COMP. LAWS § 750.227b. Petitioner, through the assistance of counsel, filed an amended petition for a writ of habeas corpus seeking relief under 28 U.S.C. § 2254. ECF Nos. 18, 19. The amended petition raises seven claims. For the reasons stated herein, the

Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and leave to proceed in forma pauperis on appeal.

## I.    BACKGROUND

Petitioner's convictions arose from a vehicular chase and shooting in Detroit, Michigan. The following facts as recited by the Michigan Court of Appeals are presumed correct on habeas review. 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> On December 18, 2014, Larnell Fleming and his friend, John Petty, were driving to a nightclub in Fleming's van when another vehicle began following them. The front seat passenger in the other vehicle leaned out the window and began firing a gun at the van. Fleming sped away with the other vehicle in pursuit. Fleming lost control of his van and crashed into another car. Fleming survived, but Petty was ejected from the van and died from internal injuries. Fleming identified defendant as the shooter, and at the time of defendant's arrest, an explosives-detection dog alerted on the coat that he had been wearing, indicating the presence of "some sort of explosive residue" on the coat. In a recorded police interview, defendant initially denied having been in the car. Later in the interview, defendant admitted that he was in the car but asserted that he was in the back seat and did not fire any shots.

*People v. Bradley*, No. 331146, 2017 WL 3495370, at *1 (Mich. Ct. App. Aug. 15, 2017) (unpublished).

Petitioner was charged in Wayne County, Michigan with the following four counts: (1) first-degree murder, in violation of MICH. COMP. LAWS § 750.316; (2) assault with intent to commit murder, in violation of MICH. COMP. LAWS § 750.83; (3) felon in possession of a firearm, in violation of MICH. COMP. LAWS § 750.224f;

and (4) felony-firearm, in violation of MICH. COMP. LAWS § 750.227b. Petitioner's first trial resulted in a mistrial. Although the jury found Petitioner guilty of being a felon in possession of a firearm (count three), it was unable to reach a verdict on counts one, two, and four. ECF No. 14-10, PageID.798–801.

The prosecution then retried Petitioner on the murder, assault, and felony-firearm counts.  On November 11, 2015, the jury acquitted Petitioner of murder, but found him guilty of assault with intent to commit murder, felon-in-possession, and felony-firearm.  ECF No. 14-20, PageID.1501–02.  On December 4, 2015, the trial court sentenced Petitioner to a term of thirty-five to fifty-five years in prison for the assault conviction, one to five years for the felon-in-possession conviction, and two years for the felony-firearm conviction, with credit for 347 days already served. ECF No. 14-21, PageID.1540–41.

On direct appeal from his convictions and sentences, Petitioner raised several claims concerning improper admission of evidence, ineffective assistance of counsel, prosecutorial misconduct, and sentencing error. The Michigan Court of Appeals rejected Petitioner's claims and affirmed his convictions and sentences in an unpublished, per curiam opinion. *See Bradley*, 2017 WL 3495370, at *5. On April 4, 2018, the Michigan Supreme Court denied leave to appeal. *See People v. Bradley*, 501 Mich. 1043; 909 N.W.2d 256 (2018) (table decision).

In 2019, Petitioner filed a motion for relief from judgment in which he raised several new claims. ECF No. 14-22. Specifically, he argued: (1) the prosecutor improperly introduced evidence of uncharged criminal conduct, (2) the search warrant for phone records was issued without probable cause, (3) trial court failed to properly instruct the jury on "dog sniffing" evidence, (4) the trial court erred by imposing costs and attorney fees, and (5) ineffective assistance of counsel at trial, sentencing, and on appeal. *Id*. The trial court denied Petitioner's motion on the basis that he had not carried his burden of establishing entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Bradley*, No. 15-000373-01-FC (Wayne Cnty. Cir. Ct. Oct. 1, 2019); ECF No. 14-23.

On January 23, 2020, Petitioner filed his initial habeas corpus petition, a motion to hold his petition in abeyance, and a motion for enlargement to time to file a habeas petition before this Court. ECF Nos. 1, 3, and 4. He explained in his motion to hold his petition in abeyance that he was in the process of appealing the trial court's decision on his post-conviction motion. ECF No. 3, PageID.29-30.

Additionally, Petitioner filed a second motion for relief from judgment and an amended motion for relief from judgment, in which he claimed that the trial court erred by scoring offense variable 3, which is physical injury to a victim, as if he had been convicted of first-degree murder. ECF Nos. 14-24 and 14-25. Petitioner relied on the Michigan Supreme Court's holding in *People v. Beck*, 504 Mich. 605; 939

N.W.2d 213 (2019), in arguing "that due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *Id*., 504 Mich. at 629, 939 N.W.2d at 227.

On July 21, 2020, this Court granted Petitioner's motion to hold his habeas petition in abeyance and administratively closed this case. ECF No. 6. The trial court subsequently denied Petitioner's second motion for relief from judgment and the amended motion on July 29, 2020, ECF No. 14-26, and the Michigan Supreme Court denied leave to appeal the trial court's decision on Petitioner's first motion for relief from judgment on November 24, 2020. *People v. Bradley*, 506 Mich. 962; 950 N.W.2d 724 (2020) (table decision).

On December 22, 2020, Petitioner filed an amended petition for the writ of habeas corpus, ECF No. 7, and a motion to lift the stay, ECF No. 9. He raised eleven claims in his amended petition. ECF No. 7, PageID.67–69. Because Petitioner alleged in his motion to lift the stay that all his issues were now exhausted, ECF No. 9, the Court re-opened this case, ECF No. 10. Petitioner's state case, however, was still pending in the Michigan Court of Appeals on Petitioner's *Beck* claim.

On January 20, 2022, the Michigan Court of Appeals affirmed the trial court's scoring of offense variable 3. *See People v. Bradley*, No. 355549, 2022 WL 187978, at *2–*3 (Mich. Ct. App. Jan. 20, 2022). The Court of Appeals stated that *Beck* did not apply to Petitioner's case, and even if it did, the trial court did not consider the

5

acquitted first-degree murder charge in its assessment of points for offense variable 3. *Id*.

In lieu of filing an answer, Respondent filed a motion to dismiss on the basis that Petitioner failed to exhaust all state remedies for one part of his claim regarding the state court's scoring of the sentencing guidelines. *See* ECF No. 13. Because both parties agreed that one habeas issue had not been raised in the Michigan Supreme Court, the Court stayed the case to allow Petitioner to exhaust the remaining claim. ECF No. 16.

On September 26, 2022, Petitioner moved to reopen the case and, with the assistance of counsel, filed a second amended petition, which the Court understands as raising the following claims:

> I.   Trial counsel was constitutionally ineffective for (A) failing to object to the admission of the interrogation video and (B) failing to request a jury instruction on mere presence.
>
> II.  The sentencing court made factual findings that increased Defendant's mandatory minimum sentencing guidelines range, in violation of due process.
>
> III. The prosecutor misled the jury by stating that gunpowder was found on Petitioner's coat when there was no evidence to support that statement, in violation of due process, and trial counsel was constitutionally ineffective for failing to object.
>
> IV.  Trial counsel was constitutionally ineffective for failing to investigate what kind of "explosive residue" was on Defendant's jacket.

V.   The search warrant for Petitioner's phone records was issued without a probable cause showing, rendering it illegal and the related evidence inadmissible, prejudicing Petitioner's right to a fair trial.

VI.   Petitioner was denied a properly instructed jury when the court denied his requested cautionary instruction on dog sniffing evidence.

VII.   Petitioner was denied the effective assistance of counsel at trial, sentencing, and on direct appeal where (A) trial counsel failed to challenge numerous instances of inadmissible, prejudicial references to Petitioner's prior bad acts, (B) trial counsel failed to seek suppression of evidence illegally obtained under a warrant violating Petitioner's Fourth Amendment right, (C) trial counsel failed to object at sentencing when the trial court erroneously imposed both costs and attorney fees without a statement of reasons, and (D) appellate counsel failed to recognize and present any of the foregoing meritorious arguments in Petitioner's direct appeal.

*See* Second Am. Pet., ECF No. 18.

On October 11, 2022, the Court reopened the matter and ordered Respondent to file an answer to the second amended petition. ECF No. 21. Respondent filed an answer contending that the petition should be denied because several of Petitioner's claims are procedurally defaulted, and all claims lack merit.  ECF No. 22. Petitioner filed a reply through counsel. ECF No. 24.

## II.   STANDARD OF REVIEW

This habeas petition is reviewed under the standards of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  28 U.S.C. § 2254(d), as amended by the AEDPA, imposes the following standard of review for habeas cases:

7

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case[.]" *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410–11. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain

8

habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III.   DISCUSSION

### A. Procedural Default

At the outset, this Court notes that although Respondent argues Petitioner has procedurally defaulted several of his claims of error, this Court is not obligated to address that defense because procedural default is not a jurisdictional bar to review the merits. *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020); *Trest v. Cain*, 522 U.S. 87, 89 (1997)); *see also Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)) ("[F]ederal courts are not required to address a procedural default issue before deciding against the petitioner on the merits.") The Sixth Circuit recognizes that its decisions "may sometimes reach the merits of a petitioner's claim, particularly when the merits are easily resolvable against the petitioner while the procedural issues are complicated." *Smith*, 962 F.3d at 207 (citing *Lambrix*, 520 U.S. at 525); *see also id.* (finding "resolution of the procedural issues . . . not necessary… [and] that the claim is better resolved on the merits.").  Here, the procedural-default analysis will not affect the outcome of this

case, and it is more efficient for this Court to proceed directly to the merits of Petitioner's claims.

## B. Ineffective Assistance of Counsel

Petitioner raises various ineffective assistance of counsel claims. Petitioner claims that counsel was constitutionally ineffective for: (1) failing to object to the admission of the interrogation video, (2) failing to request a "mere presence" jury instruction, (3) failing to investigate the explosive residue on Petitioner's jacket, (4) failing to object to the admission of prejudicial bad acts evidence, (5) failing to seek suppression of the cell data evidence, and (6) failing to object to the imposition of costs and fees at sentencing.  The Court will address the claims together for judicial clarity and economy.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. When counsel is ineffective, that right is abridged. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). To prevail on his ineffective assistance of counsel claims, Petitioner must show that the state's conclusion regarding his claims was contrary to, or an unreasonable application of, the *Strickland* test*.  See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

An attorney's performance meets the first *Strickland* element when "counsel's representation [falls] below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (quotation marks and brackets omitted).

An attorney's deficient performance is prejudicial under the second *Strickland* element if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction… resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.  "[T]he question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument

11

that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105. "Even under de novo review, the standard for judging counsel's representation is a most deferential one." *Id.*

### 1. Interrogation Video

Petitioner first argues that counsel was ineffective for failing to object to a video recording of Petitioner's police interrogation. ECF No. 19, PageID.2418. Although he concedes that his own statements are generally admissible under the Michigan Rules of Evidence, he contends that several portions of the video should have been excluded because they contained evidence of other unrelated and uncharged "bad acts" and additional evidence of guilt. Further, Petitioner contends that the video shifted the burden of proof. *Id.* at PageID.2416–35.

The Michigan Court of Appeals rejected Petitioner's arguments on direct review, concluding in relevant part that:

> As to the particular portions of the interview to which defendant refers us, we agree that some could have been challenged such as the officers' reference to defendant having previously been shot by an officer, the officer's statement that defendant's girlfriend had asserted that he had beaten her, and non-specific allegations that defendant may have been involved in prior homicides. However, this does not lead us to the conclusion that defendant received ineffective assistance of counsel as we cannot consider these items in isolation. Defense counsel succeeded in obtaining the prosecution's stipulation to deletion of significant portions of the interview. It is not surprising that in the give and take necessary to have obtained such a stipulation, defense counsel would have waived objections to some statements. And we will not fault counsel for electing to obtain favorable resolution of many of his objections in return for dropping a few of his other objections. The

12

alternative of putting all the objections before the court could readily have resulted in a far less favorable result. "We give defense counsel wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case." *People v. Heft*, 299 Mich. App. 69, 83; 829 N.W.2d 266 (2012). Moreover, defense counsel skillfully used the unproven allegations and false statements made by the police in the interview to undermine the credibility of the entire police investigation. Finally, we note that defendant was acquitted of murder, and a review of the trial record does not support the conclusion that had trial counsel raised and prevailed on all his objections defendant would [have] had a reasonable probability of being acquitted on the other charges.

*Bradley*, 2017 WL 3495370, at *2.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner directs this Court to various instances of the interrogation where it is suggested that he engaged in unrelated criminal activity (i.e., Petitioner's involvement with a police shooting during the commission of a crime, Petitioner's involvement in another homicide, and Petitioner's association with car theft and drugs). *See* ECF No. 19, PageID.2419–20. While the Court agrees, as did the Michigan Court of Appeals, that some of the portions highlighted by Petitioner likely have a basis for exclusion, the Court nevertheless concludes that the state-court record does not show counsel's actions were unreasonable.

Defense counsel objected to portions of the video being played before the jury. ECF No. 14-16, PageID.851; ECF No. 14-18, PageID.1264–65 ("[H]e's talking about murders that he's been accused of, times where he's been shot, witnesses that

13

are in jail that are talking, or saying, making statements about him[.]") The trial court directed the attorneys to review the tape together to determine appropriate redactions. ECF No. 14-16, PageID.851. After review, the attorneys reached a stipulation. ECF No. 14-18, PageID.1347–48. Although other portions of the video could have been redacted, counsel's stipulation with the prosecutor was not an unreasonable tactical decision. *Strickland*, 466 U.S. at 689. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015) (quoting *Burt v. Titlow*, 571 U.S. 12, 24 (2013).

Petitioner further contends that the video improperly implied the existence of inculpatory evidence known only to the police and prosecutor. However, defense counsel addressed this issue on cross-examination. Defense counsel thoroughly cross-examined the interrogating officers, eliciting testimony that the officers lied about having certain evidence, particularly a U-Haul video showing Petitioner as the shooter. ECF No. 14-19, PageID.1404–07. Defense counsel's decision to leave in portions of the video to later address on cross-examination is a matter of trial strategy, particularly where it successfully undermined the interrogating officers' credibility. "Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub*,

194 F. Supp. 2d 629, 651 (E.D. Mich. 2002).  For these reasons, the Court concludes that Petitioner fails to satisfy the first prong of the *Strickland* test.

Turning to *Strickland's* prejudice prong, the Court concludes that Petitioner fails to establish that counsel's conduct deprived him of a fair trial.  Any prejudice that resulted from the interrogation video was alleviated by the trial court's cautionary instruction.  The trial court addressed the issue of the other bad acts evidence with the parties and fashioned a cautionary instruction.  ECF No. 14-19, PageID.1422.  The parties agreed to the instruction.  *Id*.  The trial court later provided the following curative instruction to the jury:

> You have heard evidence that was introduced which alleges that the defendant committed crimes for which he is not on trial. You must not decide that this evidence shows that the defendant is a bad person or that he is likely to commit crimes. You must not convict the defendant here because you think he is guilty of other bad conduct. All the evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime or crimes or you must find him not guilty.

*Id.* at PageID.1477.

This Court assumes, in the absence of evidence to the contrary, that the jury followed the curative instruction not to consider the other acts evidence. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"). And Petitioner provides no reason to believe otherwise.

Further, Petitioner's argument that the video shifted the burden of proof by implying that Petitioner had to prove his innocence fails for the same reason.  At the start of the trial, the court instructed the jury that the prosecutor must prove the elements of the charged crimes and "[b]y law the defendant does not have to prove his innocence or produce any evidence." ECF No. 14-16, PageID.1035. At the end of trial, the trial instructed the jury, again, that "the prosecutor must prove beyond a reasonable doubt that the crime occurred." ECF No. 14-19, PageID.1476.  The Court presumes the jury followed these instructions. Petitioner, therefore, fails to establish that he was prejudiced.  He is not entitled to relief on this claim.

### 2.  Jury Instruction

Petitioner's second claim asserts that defense counsel was ineffective for failing to request Michigan Model Criminal Jury Instruction 8.5, which instructs that a defendant's mere presence when a crime is taking place is insufficient to establish the defendant's criminal liability. Petitioner argues that the video established that although he was in the car, he did not participate in the shooting; therefore, a mere presence instruction was appropriate.  The Michigan Court of Appeals rejected this argument stating, in relevant part:

> The subject instruction, however, did not pertain to a basic and controlling issue. This instruction is appropriate where a defendant is charged under an aiding and abetting theory. *See e.g. People v. Norris*, 236 Mich. App. 411, 419–420; 600 N.W.2d 658 (1999) (reciting language substantially similar to the "mere presence" instruction in M Crim JI 8.5 and stating that such "mere presence" is not sufficient to

16

convict a defendant of aiding and abetting). In this case, counsel, quite effectively, obtained a ruling from the court that the jury would be instructed only on the theory that defendant was the shooter. Thus, rather than limiting the application of an aiding and abetting charge by requesting the mere presence instruction, defense counsel was able, over the prosecution's objection, to prevent the jury from any consideration whether defendant, even if not the shooter, should be convicted as an abettor. Counsel's strategy was anything but ineffective.

*Bradley*, 2017 WL 3495370, at \*3.

The Michigan Court of Appeals did not unreasonably apply federal law.[1] Defense counsel's decision to object to the prosecution's request for an aiding and abetting instruction, ECF No. 14-19, PageID.1425, was not an unreasonable trial strategy, particularly in light of Petitioner's admission that he was in the car. Defense counsel maintained that the prosecution's only theory of the case was that his client was the shooter. *Id*. The trial court agreed, noting that "[t]he crime has always been the shooting which has been identified as Mr. Bradley according to the prosecution's proofs." *Id*. at PageID.1428, 1430. Requesting a mere presence instruction would have undermined counsel's strategy to hold the prosecution to its proofs. Keeping in mind the significant deference afforded to trial counsel's

---

[1] Plaintiff's suggestion that the Michigan Court of Appeals applied the wrong standard of law, and that its ruling is therefore contrary to Supreme Court precedent, fails. Assuming *arguendo* that the court *did* apply the wrong legal standard, this Court "determine[s] the principles necessary to grant relief" upon habeas review. *Lafler v. Cooper*, 566 U.S. 156, 173 (2012). Here, analyzing this issue under the *Strickland* test, it is clear that defense counsel was not ineffective.

strategic choices, the Court will not now second-guess this decision.  Petitioner fails

to show that counsel's conduct fell below an objective standard of reasonableness.

### 3.  Explosive Residue Testing

Next, Petitioner argues that defense counsel provided ineffective assistance

by failing to request additional gunshot residue testing. Bureau of Alcohol, Tobacco,

and Firearms and Explosives Agent Jason Salerno testified that explosive residue

was detected on Petitioner's jacket.  Petitioner maintains that he informed counsel

that there was no explosive residue on his jacket, and that the substance detected was

likely ether from cooking heroin on the day of his arrest.  ECF No. 19, PageID.2461–

62.  The Michigan Court of Appeals rejected this argument, concluding that the

record did not support Petitioner's claim that he informed counsel the residue was

from cooking heroin. *Bradley*, 2017 WL 3495370, at *3. Moreover, the court

determined that counsel was not ineffective "because counsel might have reasonably

feared that additional testing would have revealed inculpatory evidence." *Id.*

The Michigan Court of Appeals did not unreasonably apply federal law.

Defense counsel's decision to forgo further testing under these circumstances,

particularly where testing could have shown incriminating evidence, was a

reasonable trial strategy that defeats Petitioner's ineffective assistance of counsel

claim.  *See Nickerson v. Mackie*, No. 15-2515, 2016 WL 3144331, at *2 (6th Cir.

June 3, 2016) (concluding that trial counsel's decision to forgo further testing for

18

gunshot residue was a reasonable trial strategy); *see also Jones v. Butler*, 778 F.3d 575, 583 (7th Cir. 2015) (holding that the state court did not unreasonably apply *Strickland* in rejecting habeas petitioner's claim that trial counsel was ineffective in forgoing gunshot residue testing, reasoning that counsel made tactical decision because such additional testing could have proven detrimental to the petitioner).  For these reasons, Petitioner is not entitled to relief.

### 4.  Bad Acts Evidence

Similar to his first ineffective assistance claim, Petitioner argues trial counsel failed to challenge numerous instances of inadmissible, prejudicial references to his prior bad acts during trial. ECF No. 19, PageID.2482. The state courts did not address this claim on the merits; therefore, the Court's review is de novo. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) ("Where… the state court did not assess the merits of a claim properly raised in a habeas petition… [the federal] court reviews questions of law and mixed questions of law and fact de novo.").

The Court need not address *Strickland's* first prong because the claim is more easily resolved by addressing the prejudice prong. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). As discussed, the Court concluded that Petitioner cannot show prejudice related to the admission of prior bad acts because the trial court issued a cautionary

instruction, curing any potential prejudice.  ECF No. 14-19, PageID.1477. Petitioner, therefore, fails to show that counsel was ineffective.

### 5.  Suppression

Petitioner argues that defense counsel was ineffective for failing to seek suppression of the cellphone data obtained through an illegal search warrant. ECF No. 19, PageID.2484. The state courts did not address this claim on the merits; therefore, the Court's review is de novo.  *Maples*, 340 F.3d at 436.

Again, Petitioner cannot establish that he was prejudiced by defense counsel's decision to forgo a suppression hearing.  *See Strickland*, 466 U.S. at 697.  The purpose of the cell data was to pinpoint Petitioner's general location at the time of the shooting.  Petitioner concedes that he admitted to being in the car pursuing the victim on the day of the shooting.  ECF No. 19, PageID.2375.  Even if defense counsel moved to suppress the cell data, Petitioner nevertheless placed himself at the crime scene. *See Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (discussing the evidentiary strength of a defendant's admissions, noting that they "come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct.") (quoting *Bruton v. United States*, 391 U.S. 123, 140 (1968) (White, J., dissenting)).  Considering the strength of the other evidence that places Petitioner at the crime scene, Petitioner fails to show the outcome of the trial would have been different had the cell phone data evidence been suppressed.  *Berghuis v.*

20

*Thompkins*, 560 U.S. 370, 390 (2010) (finding that even if counsel's representation was deficient, any error likely would not have made any difference because of the "all the other evidence of guilt."). Therefore, Petitioner is not entitled to relief on this claim.

### 6. Costs and Fees

Lastly, Petitioner asserts that he was denied effective assistance of counsel when counsel failed to object to the imposition of costs and attorney fees at sentencing. ECF No. 19, PageID.2486. Where a habeas petitioner is not claiming the right to be released but is challenging the imposition of a fine or other costs, he may not bring a petition for writ of habeas corpus. *See* 28 U.S.C. § 2254 ("a district court shall entertain an application for a writ of habeas corpus… only on the ground that he is *in custody* in violation of the Constitution or laws or treaties of the United States") (emphasis added); *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir.1995). Accordingly, Petitioner's claim, which asserts that costs and attorney fees were erroneously imposed, is without merit in this habeas petition. Therefore, his ineffective assistance of counsel claim based on the failure to object to such costs and fees is also without merit.

### C. Sentencing Error

Petitioner contends that the trial court erred when scoring the sentencing guideline variables by considering factors beyond those admitted to by Petitioner or

found by a jury beyond a reasonable doubt. ECF No. 19, PageID.2438. Petitioner

raised this claim on direct appeal and the Michigan Court of Appeals rejected it on

the merits, concluding that:

> The trial court imposed a minimum sentence within the legislative sentencing guidelines range. Defendant argues that he is entitled to resentencing because the trial court relied on judicial fact-finding to score certain offense variables, contrary to *People v. Lockridge*, 498 Mich. 358; 870 N.W.2d 502 (2015). In *Lockridge*, our Supreme Court held that Michigan's sentencing guidelines are unconstitutional to the extent that they "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score the offense variables . . . that *mandatorily* increase the floor of the guidelines minimum sentence range[.]" *Id*. at 364. Although the guidelines are no longer mandatory, "they remain a highly relevant consideration in a trial court's exercise of sentencing discretion" and thus the trial court must still score the guidelines, "whether using judge-found facts or not," and "consult the applicable guidelines range and take it into account when imposing a sentence." *Id*. at 391–392, 392 n. 28.
>
> Defendant was sentenced more than four months after *Lockridge* was decided. The trial court is presumed to know the law unless the contrary is clearly shown, *People v. Alexander*, 234 Mich. App. 665, 675; 599 N.W.2d 749 (1999), and defendant does not contend that the trial court did not understand that the guidelines were advisory only. Because *Lockridge* does not prohibit the use of judicially-found facts in scoring the guidelines, defendant has not shown plain error.

*Bradley*, 2017 WL 3495370, at *4–*5.

The Michigan Court of Appeals' decision is neither contrary to Supreme

Court precedent nor an unreasonable application of federal law or the facts. In 2013,

the United States Supreme Court held that any fact that increases the mandatory

minimum sentence for a crime is an element of the criminal offense that must be

proven beyond a reasonable doubt. *See Alleyne v. United States*, 570 U.S. 99, 103 (2013). *Alleyne* expands the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), in which the U.S. Supreme Court held that any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. In reaching this conclusion, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), which held that only factors that increase the maximum, as opposed to the minimum, sentence must be proven beyond a reasonable doubt to a factfinder. *Alleyne*, 570 U.S. at 106–07. The Supreme Court, however, indicated that the ruling in *Alleyne* did not mean that every fact influencing judicial discretion in sentencing must be proven to a jury beyond a reasonable doubt. *Id*. at 116.

Two years later, the Michigan Supreme Court relied on *Alleyne* in finding that Michigan's mandatory sentencing guidelines scheme violated the Sixth Amendment right to a jury trial. *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502, 373–74 (2015). The Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violated the Sixth Amendment, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor

of the guidelines minimum sentence range, i.e., the "mandatory minimum" sentence under *Alleyne*." *Lockridge*, 498 Mich. at 364 (emphasis in original). The Michigan Supreme Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only. *Id*. at 391–92 (relying on *Booker*, 543 U.S. at 264–65 (holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).

After correcting the unconstitutional sentencing guidelines, the *Lockridge* court decided that the proper remedy for defendants who had been sentenced under the unconstitutional sentencing guidelines was to "remand[ ] to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error." *Id*. at 397.  Known as a *Crosby* hearing after *United States v. Crosby*, it requires a trial court to conduct a new sentencing hearing only if it finds that it would have imposed a materially different sentence had the guidelines been advisory and not mandatory. *Id*. at 395–98 (citing *United States v. Crosby*, 397 F.3d 103, 117–18 (2d Cir. 2005)).

The Sixth Circuit subsequently granted habeas relief on a challenge to Michigan's sentencing guidelines, holding that the United States Supreme Court's

decision in *Alleyne* clearly established that Michigan's *mandatory* minimum sentencing scheme was unconstitutional. *Robinson v. Woods*, 901 F.3d 710, 716–18 (6th. Cir. 2018).   In so ruling, the Sixth Circuit concluded that "[a]t bottom, Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Id*. at 716 (citing *Alleyne*, 570 U.S. at 111–12).

This case is distinguishable from *Robinson* because Petitioner was sentenced on December 4, 2015, four months after the Michigan sentencing guidelines were made advisory following *Lockridge*. *See* ECF No. 14-21. The United States Supreme Court has previously held that purely advisory applications of the guidelines do not run afoul of the Sixth Amendment. *See Booker*, 543 U.S. at 232 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment."); *see also Apprendi*, 530 U.S. at 481–82 (reiterating that "'a sentence imposed by a federal district judge, *if within statutory limits*, is generally not subject to review'") (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972) (emphasis in original)); *United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006) (finding that defendant's sentencing in federal court based on facts other than those rendered in the verdict or admitted by defendant

did not violate his Sixth Amendment right to trial by jury, since defendant was sentenced under advisory, rather than mandatory sentencing guidelines).

Moreover, "'[a]fter *Lockridge*, a trial court's imposition of a sentence, no matter how it may be guided by the sentencing guidelines, represents an exercise of the court's discretion.'" *Jenkins v. Braman*, No. 2:20-CV-12585, 2024 WL 1335624, at *7 (E.D. Mich. Mar. 27, 2024) (quoting *Fitzgerald v. Trierweiler*, No. 1:17-CV-435, 2017 WL 2790710, at *7 (W.D. Mich. June 28, 2017)). Because Petitioner was sentenced after the decision in *Lockridge*, the sentencing guidelines were no longer mandatory but advisory; thus, the sentence imposed was an exercise of the judge's discretion. *Id*.  Because the "facts the trial court may have found in support of its exercise of discretion do not implicate the Sixth Amendment," the Michigan courts reasonably rejected Petitioner's Sixth Amendment claim. *Id*. (quoting *Fitzgerald*, 2017 WL 2790710, at *7) (brackets omitted).

As such, Petitioner is not entitled to habeas relief based upon this claim because his sentencing occurred after the Michigan Supreme Court ruled that Michigan's sentencing guidelines were advisory only.

To the extent Petitioner argues that the trial judge was under the mistaken belief that the guidelines were still mandatory after *Lockridge*, there is little evidence to support that claim. "Trial judges are presumed to know the law and to apply it in making their decisions." *Walton v. Arizona*, 497 U.S. 639, 653 (1990), *overruled on*

*other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also People v. Alexander*, 234 Mich. App. 665, 675; 599 N.W.2d 749 (1999) ("The trial court is presumed to know the law unless the contrary is clearly shown.").

Petitioner points to the trial judge's statement during his sentencing that "[a]fter [*Lockridge*] I have to be real careful about judicial fact finding." ECF No. 14-21, PageID.1522. The holding in *Lockridge* did not forbid judges from utilizing judicial factfinding, so Petitioner contends that this statement demonstrates the trial court's misunderstanding of the law. ECF No. 19, PageID.2444. But the trial judge's statement does not clearly demonstrate any misunderstanding about whether the guidelines were mandatory or advisory. The trial judge made this statement when the parties were arguing over how to score OV 5 of the sentencing guidelines, which considers the psychological harm to the victims' family members. ECF No. 14-21, PageID.1518. At that time, the judge was simply questioning whether she had any evidence of the victims' family members' psychological injuries. *Id.*

Petitioner also points to the trial judge's statement that Petitioner's sentence was at "the top of the guidelines[,] but it is within the guidelines." *Id.* at PageID.1542. Again, this statement does not demonstrate that the trial judge misunderstood whether the guidelines were mandatory or advisory. The trial judge was within the scope of the Sixth Amendment by using the guidelines in her discretion to fashion a sentence for Petitioner. *See Booker*, 543 U.S. at 232.

Therefore, Petitioner's claim for habeas relief based on this argument fails.

## D. Prosecutorial Misconduct

Petitioner argues that the prosecutor denied him a fair trial by misstating the evidence during closing argument, and defense counsel was ineffective for failing to object. Specifically, Petitioner argues that the prosecutor misrepresented facts in evidence when he told the jury that Petitioner's coat was tested and that there was gunpowder residue that was detected on the coat. ECF No. 19, PageID.2449. The Michigan Court of Appeals addressed this argument on direct review, concluding that:

> The prosecutor's assertion that defendant's coat was tested and was found to have gunpowder residue was based on the evidence and reasonable inferences drawn therefrom. Fleming testified that defendant was shooting at him from the Jeep, and bullet holes were found in Fleming's van. Defendant admitted in his statement that the black coat he was wearing was the same one he wore on the night of the offense. The coat was exposed to an explosives-detection dog, who alerted on the coat, indicating that there was "some sort of explosive residue" on it. Exposing an item to a dog trained to detect a particular substance or substances is a form of testing. Gunpowder is, by definition, an explosive, and gunfire was the only type of explosive event known to have occurred during the offense. Thus, it was reasonable to infer that the explosive residue on the coat was gunpowder. Therefore, defendant has not shown that the prosecutor's argument was improper. Consequently, his alternative claim that defense counsel was ineffective for failing to object to the prosecutor's argument necessarily fails because "trial counsel cannot be faulted for failing to raise an objection . . . that would have been futile." *People v. Fike*, 228 Mich. App. 178, 182; 577 N.W.2d 903 (1998).

*Bradley*, 2017 WL 3495370, at *4.

The Michigan Court of Appeals' decision was not an unreasonable application of federal law or contrary to clearly established Supreme Court precedent. For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012).

While prosecutors may not misstate the evidence, *United States v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001), or argue facts not in evidence, *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004), *abrogated on other grounds by Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010), they can make arguments based upon the evidence and have "'leeway to argue reasonable inferences from the evidence' during closing

arguments." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (quoting

*Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)).

With respect to the residue detected on Petitioner's jacket, the prosecutor

made the following arguments in closing and rebuttal:

> The defendant has on ——— said he had on the same coat the shooter
> had on? Well, there's only two people in the car the driver and the
> defendant. So, yeah, he did have on the same coat, he had on the coat
> in which ——— that was later tested. And when they test the coat what
> did they find on it? There was gunpowder residue that was detected on
> the coat that the defendant was wearing that Officer Lucy and Sergeant
> Eby took from the defendant when they were interviewing him. That's
> the coat that the defendant was wearing on the night of this incident that
> has the gunpowder residue on it. Another coincidence? I don't think so.
>
> * * *
>
> Now, he talks about we fabricated things we didn't fabricate anything.
> The jacket, you saw the jacket, the jacket was here in court. That was
> the jacket that the defendant was wearing. They took that off of him on
> the video at the end. And that jacket did have gunpowder residue on it
> because the defendant was shooting in that jacket on that day.

ECF No. 14-19, PageID.1434–35, 1461.

The Michigan Court of Appeals fairly determined that the evidence presented

at trial supported the inference that the jacket was canine tested and gunpowder

residue was detected.  The victim, Larnell Fleming, testified that he saw Petitioner

shooting at his car.  ECF No. 14-17, PageID.1080. Fleming further testified that he

saw bullet holes on the driver's side of his van. *Id*. at PageID.1088.  Moreover,

Officer Raymond Diaz testified that seven 9-millimeter bullet casings were

recovered near the crime scene. *Id*. at PageID.1190.  Petitioner concedes in his

petition that he admitted to being in the car pursuing the victim on the day of the shooting.  ECF No. 19, PageID.2375.

Agent Salerno testified that his canine was first called to the scene of the shooting to locate evidence.  The canine was "a single purpose canine and [was] trained in over 19,000 explosives."  ECF No. 14-18, PageID.1334.  Salerno testified that while at the crime scene, the canine "alerted on a Remington Peters Plus P Nine Millimeter casing."  *Id*. at PageID.1336. The canine alerted because there was "an odor of a spent casing of a gun powder expelled." *Id*. at PageID.1337. The canine was also called to test a jacket.  It is undisputed that the jacket belonged to Petitioner. Salerno testified that the canine alerted to explosive residue on the jacket.  *Id*. at PageID.1340–41.

Based on this evidence, Petitioner fails to establish that the prosecutor misled the jury during closing argument.  The prosecutor reasonably inferred that the explosive residue detected on the jacket was gunpowder residue.  Further, to the extent Petitioner challenges that any "testing" occurred, he fails to present any authority to this Court that dog sniffing is not an accepted form of testing.  Indeed, witness Tom Eby referred to the dog sniff as a "gunshot residue test." *Id.* at PageID.1382.  Additionally, to make matters clearer, the trial court instructed the jury that "the lawyer's statements and . . . arguments are also not evidence."  ECF

No. 14-19, PageID.1474.   Petitioner fails to show that the jury was misled or prejudiced by the prosecutor's remarks.

Lastly, Petitioner also brings a related claim that defense counsel was ineffective for failing to object to the prosecutor's closing remarks. The Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claim on the basis that any objection would have been futile.  *See Bradley*, 2017 WL 3495370, at *4.  The Court agrees with the Michigan Court of Appeals' application of federal law.  Because the Court has determined the prosecutor's remarks were proper, any objection would have been futile.  It is well established that "the failure to make futile objections does not constitute ineffective assistance[.]" *Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir. 2016).  Thus, counsel was not ineffective for failing to object.  The Court denies relief on Petitioner's claim.

### E. Fourth Amendment

Petitioner next argues that the search warrant for his cell phone records was executed without probable cause, and that the related evidence was inadmissible. ECF No. 19, PageID.2468. This claim will not be addressed on the merits because Petitioner cannot overcome the hurdle imposed by *Stone v. Powell*, in which the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an

unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494–95 (1976).

The Sixth Circuit Court of Appeals employs a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quotation marks omitted). The relevant inquiry is whether the petitioner "had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided." *See Wynne v. Renico*, 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003), *rev'd on other grounds*, 606 F.3d 867 (6th Cir. 2010).

Michigan provides ample opportunity to litigate Fourth Amendment claims. Typically, such claims are addressed by pre-trial motions to suppress. *See People v. Ferguson*, 376 Mich. 90, 93–94, 135 N.W.2d 357, 358–59 (1965) (holding motions to suppress must be brought timely where the factual circumstances constituting the illegal arrest or seizure are known to the defendant before trial). Petitioner makes no allegations that presentation of his Fourth Amendment claim was frustrated by a failure of the state court procedures for resolving such a claim. Rather, he merely

33

asserts that the state court failed to address the claim on collateral review. ECF No. 19, PageID.2474. This claim is therefore without merit.

### F. Jury Instructions

Petitioner next contends that the trial court should have given a cautionary instruction on "dog sniffing" evidence and that the failure to do so deprived him of his right to a properly instructed jury. *Id.* Because the state courts did not address this issue on the merits, the Court will review the claim de novo. *See Cone v. Bell*, 556 U.S. 449, 472 (2009).

The Supreme Court "has repeatedly rebuffed due process challenges to erroneous jury instructions." *Levingston v. Warden*, 891 F.3d 251, 255 (6th Cir. 2018); *see, e.g.*, *Waddington v. Sarausad*, 555 U.S. 179, 192–94 (2009); *Henderson v. Kibbe*, 431 U.S. 145, 152 (1977). Typically, a claim that a trial court gave an improper jury instruction or failed to give a requested instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process. *Henderson*, 431 U.S. at 154; *see also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (concluding that erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000) (same). A jury instruction is not to be judged in artificial

34

isolation, but must be considered in the context of the instructions as a whole and the trial record. *Jones v. United States*, 527 U.S. 373, 391 (1999); *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996). The failure to give an instruction that is supported by the evidence does not automatically justify habeas relief—the failure to instruct must have rendered the trial fundamentally unfair. *See Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 742 (6th Cir. 2007).

 A habeas petitioner's "burden is especially heavy [when] no [affirmatively] erroneous instruction was given . . . . An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law.  *See Estelle*, 502 U.S. at 75.

Here, the prosecutor presented Agent Salerno's testimony that his explosive detective canine identified "an odor of spent casing of a gun power" near the scene of the shooting.  ECF No. 14-18, PageID.1336–37.  Salerno further testified that the dog later alerted to the presence of explosive residue on Petitioner's jacket. *Id*. at PageID.1341. ("[H]e had a change of behavior on the jacket itself and alerted on it by sitting."). In light of this testimony, defense counsel requested that the trial court issue an instruction on "tracking dog evidence." ECF No. 14-19, PageID.1423. The following colloquy transpired:

DEFENSE COUNSEL: I would – Looking at it I think that 4.4, tracking dog evidence, we had the testimony that was read in regarding the canine that tracked for incentive explosives.

THE COURT: Well, the case of[] People versus McPherson, M—C—P—H—E—R—S—O—N, 85 Mich App 341, 1978 says that the proponent of tracking dog evidence must show the handler was qualified to use the dog, the dog was trained and accurate in tracking humans, and the dog was placed on the trail where circumstances indicate the alleged guilty party to have been. Tracking dog evidence not bomb sniffing dog – or not explosive sniffing evidence.

DEFENSE COUNSEL: Yes. Well, it looks like that would be an instruction I guess for first impression to apply or you just can't say that you must take as given that this dog can detect explosives. You know, it seems to me whether it's tracking a human, whether or not tracking explosives, accelerants, or anything there needs to be that cautionary instruction that there should be other corroborating evidence, you know, before you rely on a canine tracking dog to – for that evidence to be accepted.

THE COURT: Mr. Haywood?

THE PROSECUTOR: I'd ask the Court not to give that. I don't see what the . . . purpose for giving it would be.

DEFENSE COUNSEL: Well –

THE COURT: Mr. Glenn, I understand your objection but like you say this is an issue of first impression. We don't have any guidance from the Court concerning the use of instructions concerning bomb sniffing dogs and whether they're inherently reliable or not and without some legal guidance backing me up I can't – I don't think it would be prudent to create a jury instruction at this point.

*Id*. at PageID.1423–24.

Had the trial court agreed to issue the instruction, the state model instruction

for tracking-dog evidence provides:

> You have heard testimony about the use of a tracking-dog. You must consider tracking-dog evidence with great care and remember that it has little value as proof. Even if you decide that it is reliable, you must not convict the defendant based only on tracking-dog evidence. There must be other evidence that the defendant is guilty.

*See* Mich. Model Crim. Jury Instruction 4.14.

Petitioner argues that without this cautionary instruction, the jury did not know how to properly consider the dog-sniffing evidence. ECF No. 19, PageID.2476.  First, to the extent that Petitioner asserts that the trial court erred in instructing the jury under Michigan law, he merely alleges a violation of state law which does not justify federal habeas relief. *See, e.g.*, *Rashad*, 675 F.3d at 569 ("a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief"). State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Second, even assuming the trial court should have given the cautionary jury instruction, Petitioner has not shown that the failure to provide the dog-tracking (sniffing) instruction rendered his trial fundamentally unfair.  The trial court instructed the jury to "think about all the evidence and then decide what each piece of evidence means and how important you think it is."  ECF No. 14-19, PageID.1472.  There is nothing in the state-court record that suggests the jury's verdict relied solely on the dog-sniffing evidence.  Importantly, the prosecution

presented other evidence of Petitioner's guilt. Fleming testified that he knew Petitioner from his neighborhood. ECF No. 14-17, PageID.1069. Fleming further testified that he saw Petitioner shooting at his car. *Id*. at PageID.1080. Expert witness Stan Brue testified that Petitioner's cell phone records established that he was in the general vicinity of the shooting on the date and time it occurred. ECF No. 14-18, PageID.1359, 1364. Moreover, it is uncontested that during the video-recorded police interview played before the jury, Petitioner admitted that he was in the car tailing the victim at the time of the shooting. *Bradley*, 2017 WL 3495370, at *1. Considering all the evidence presented, the jury could have convicted Petitioner of the crimes charged without the dog-sniffing evidence. Thus, his trial was not rendered fundamentally unfair without the cautionary instruction. Petitioner is not entitled to habeas relief on this claim.

### G. Ineffective Assistance of Appellate Counsel

Lastly, Petitioner argues that appellate counsel was ineffective for failing to raise habeas claims five through seven on direct appeal. ECF No. 19, PageID.2488. Petitioner raised this claim on collateral review, and the trial court rejected it on the basis Petitioner failed to meet "his 'heavy burden' of establishing that his appellate counsel's performance fell below an objective standard of reasonableness." ECF No. 14-23, PageID.1578.

It is true that the Sixth Amendment guarantees a defendant the right to the

effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985); *Halbert v. Michigan*, 545 U.S. 605, 609–10 (2005). The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel[.]" *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Court-appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *See Jones v. Barnes*, 463 U.S. 745, 751–52 (1983).  As discussed, the claims presented in this habeas petition are meritless. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Petitioner is not entitled to relief.

## IV.   CERTIFICATE OF APPEALABILITY

The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, an inmate must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas

petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id*. at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claims to be debatable or wrong. Nor may Petitioner have leave to appeal *in forma pauperis* because such an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.    CONCLUSION

Based upon the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that leave to appeal in forma pauperis is **DENIED**.


Dated:  November 26, 2024                    /s/Gershwin A. Drain
                                             GERSHWIN A. DRAIN
                                             United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 26, 2024, by electronic and/or ordinary mail.

<u>/s/ Marlena Williams</u>
Case Manager